Philip **KLEIN**, Appellant,

v.

The **LIONEL CORPORATION**.

No. 11872.

United States Court of Appeals
Third Circuit.

Argued June 21, 1956.

Decided Sept. 25, 1956.

David Snellenburg, II, Wilmington, Del. (John Van Brunt, Jr., Wilmington, Del., on the brief), for appellant.

Thomas Cooch, Wilmington, Del. (Thomas S. Lodge. Connolly, Cooch &

Bove, Wilmington, Del., on the brief), for appellee.

Before BIGGS, Chief Judge, GOOD-RICH, Circuit Judge, and VAN DUSEN, District Judge.

BIGGS, Chief Judge.

The plaintiff, Klein, brought suit against The Lionel Corporation and others for treble damages alleging price discrimination under the Robinson-Patman Act of 1936. 49 Stat. 1526, 15 U.S.C.A. § 13. The court below gave summary judgment in favor of The Lionel Corporation and other defendants on the ground that Klein had no cause of action for a discrimination under the Act since Klein was not a purchaser from Lionel but purchased Lionel products through wholesalers or jobbers. 1956, 138 F. Supp. 560. Klein appeals from the summary judgment insofar as it relates to Lionel.

Lionel sells toy electric trains and accessories to jobbers, middlemen and to some retailers at a reasonable discount which is determined by the nature of the purchaser's organization, whether jobber, middleman or retailer. Klein is a retailer in Wilmington, Delaware, but he is not one of the retailers to whom Lionel sells directly. Klein purchases Lionel's products for resale from jobbers or middlemen. Klein's purchases are made at a discount smaller than that given to retailers to whom Lionel sells directly. Klein is in competition with the retailers to whom Lionel sells directly and therefore contends that he should receive as a discount a sum equivalent to the largest discount given to any of them.

Klein bases his cause of action on Section 2(a) of the Clayton Act, as amended, 15 U.S.C.A. § 13(a) and on Section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a. The portions of these sections pertinent to the issues presented are as follows:

Section 2(a) provides that, "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States *. * *, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided* * * * That nothing contained in sections 12, 13, 14–21, and 22–27 of this title shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade * *."

Section 3 of the Robinson-Patman Act provides that, "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to be a party to, or assist in, any transaction of sale, or contract to sell, which discriminates to his knowledge against competitors of the purchaser, in that, any discount, rebate, allowance, or advertising service charge is granted to the purchaser over and above any discount, rebate, allowance, or advertising service charge available at the time of such transaction to said competitors in respect of a sale of goods of like grade, quality and quantity * *."

The decisions of many cases [1] have crystallized the rule that an indi-

---

1. F. T. C. v. Morton Salt Co., 1948, 334 U.S. 37, 45, 68 S.Ct. 822, 92 L.Ed. 1196; Naifeh v. Ronson Art Metal Works, Inc., 10 Cir., 1954, 218 F.2d 202, 206; Chicago Seating Co. v. S. Karpen & Bros., 7 Cir., 1949, 177 F.2d 863; Shaw's, Inc., v. Wilson-Jones Co., 3 Cir., 1939, 105 F. 2d 331; United States v. Borden Co., D.C.N.D.Ill.1953, 111 F.Supp. 562, 580, modified on other grounds, 1954, 347 U.S. 514, 74 S.Ct. 703, 98 L.Ed. 903; A. J. Goodman & Son v. United Lacquer Mfg. Corp., D.C.D.Mass.1949, 81 F.Supp. 890, 892; Sorrentino v. Glen-Gery Shale Brick Corp., D.C.E.D.Pa.1942, 46 F.Supp. 709, 711.

vidual can have no cause of action under Section 2(a) of the Clayton Act unless he is an actual purchaser from the person charged with the discrimination. In Shaw's, Inc., v. Wilson-Jones Co., 3 Cir., 1939, 105 F.2d 331, 333, we stated: "The discrimination in price referred to must be practiced 'between different purchasers'. Therefore at least two purchases must have taken place. The term purchasers means simply one who purchases, a buyer, a vendee." Klein did purchase Lionel products, but not from Lionel. It follows that the necessary requisite of two purchasers from the same vendor is not met and Klein therefore can claim no protection under the Act as a direct purchaser.

■ The construction put on the term "purchaser" in Section 2(a) of the Clayton Act must also be placed on that term in Section 3 of the Robinson-Patman Act. These sections are parts of the same law and must be construed harmoniously. The court below properly placed such a construction on Section 3 and construed competitors as meaning "competing purchasers from the same seller." D.C.D.Del.1956, 138 F.Supp. 560, 566. Thus Klein has no basis of recovery under Section 3. There is also some question as to whether an individual can have a cause of action under Section 3 since that section may have been intended to provide only a criminal penalty for prescribed violations of Section 2 of the Clayton Act. See Vance v. Safeway Stores, D.C.D.N.Mex.1956, 137 F. Supp. 841. We need not decide what is the intended purpose of Section 3 since the instant case is determinable on the showing that Klein was not the type of purchaser required by the Act.

While Klein cannot claim to be a direct purchaser from Lionel, he hopes to obtain relief under the Act by other means. He argues that as a customer of a purchaser he falls within the language of Section 2(a), " * * * or with customers of either of them". These words do not include customers of purchasers within the category of a purchaser required by the Act. Such a construction would be contrary to the authorities cited in footnote 1 supra. The words merely indicate the level on which the discrimination practiced on a purchaser might be felt in order for it to be actionable. See F. T. C. v. Morton Salt Co., 1948, 334 U.S. 37, 55, 68 S.Ct. 822, 92 L.Ed. 1196, and the decision below, 138 F.Supp. 560, 563.

■ Klein contends next that he is entitled to relief since the control that Lionel exercised over the resale of its products serves to constitute Klein as a purchaser within the meaning of the Act. Lionel fixes the minimum resale price[2] of its products in Wilmington, Delaware, on the basis of the Fair Trade statute in that State. 6 Del.Code, §§ 1901–1907 (1953). In support of his position Klein cites Matter of Luxor, 31 F.T.C. 658 (1940) and Matter of Kraft-Phenix Corporation, 25 F.T.C. 537 (1937). Both cases involve a request for a cease and desist order from the Federal Trade Commission. There was a direct finding in Matter of Luxor that Fair Trade contracts and the maintenance of a pricing policy on products would constitute retailers who purchase from jobbers, purchasers under Section 2(e) of the Clayton Act. 31 F.T.C. at p. 663. The Commission found in Matter of Kraft-Phenix Cheese Corporation that a retailer is a purchaser when a manufacturer makes effective its price policies as applied to the retailer. 25 F.T.C. at p. 546. Whatever may be the wisdom of such determinations where a party is seeking a cease and desist order, we are of the view that a similar result should not be reached where the plaintiff seeks treble damages under 15 U.S.C.A. § 13. Fair Trade con-

---

2. In an affidavit dated August 19, 1955, Klein deposed that since the date of the action Lionel abandoned its retail fair trade structure and substituted fair trade at a wholesale level. Lawrence Cowen, president of Lionel, in an affidavit dated September 8, 1955, denied that Lionel executed any fair trade agreements at a wholesale level. In our view of the case it was not necessary for the court below to resolve this question of fact in order properly to grant summary judgment.

tracts are specifically permitted under 15 U.S.C.A. § 1 as not being illegal restraints on trade. It would violate the policy of that statute to so construe it as to expose a manufacturer-seller to greater liability when the statute was intended to benefit him. We therefore hold that a retailer who buys from a jobber does not become a purchaser under Section 2 (a) of the Clayton Act merely because the products he deals in are Fair Traded.

Accordingly the judgment of the court below will be affirmed.